FRANCES FREE, Plaintiff-Appellant, v. HOLY CROSS HOSPITAL,
Defendant-Appellee.

First District (4th Division)   No. 85—2900

Opinion filed March 5, 1985.

Solomon I. Hirsh, Dale D. Pierson, and Janet Harris Wolfe, all of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (William G. Swindal, Joshua G. Vincent, and Eric R. Blomquist, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Frances Free, brought this action against the defendant, Holy Cross Hospital, for wrongful termination of her employment as a nurse. Her three-count complaint sought damages based on retaliatory discharge, breach of employment contract, and intentional infliction of emotional distress. The trial court granted the hospital's motion to dismiss the complaint for failure to state a cause of action and subsequently denied Free's motions for reconsideration and leave to file an amended complaint. Free has appealed, contending that: (1) her complaint states a cause of action for retaliatory discharge based upon the Illinois Right of Conscience Act (Ill. Rev. Stat. 1985, ch. 111½, par. 5301 et seq.); (2) the hospital's personnel policy manual created an employment contract which the hospital breached by terminating her employment without complying with the procedures set forth in the manual; and (3) the trial court abused its discretion in denying her motion for leave to amend the complaint.

Free alleged in her complaint that she received a hospital personnel policy manual at the time she was hired in September of 1969. The manual stated that the policies contained therein had been developed to recognize the rights and explain the duties of hospital employees and detailed a comprehensive program of discipline and discharge. Included in the program was a system of progressive discipline and a provision that employees could be discharged only for "just cause." The manual provided, however, that the hospital reserved the right to immediately discharge, without prior suspension or discipline, employees who had committed certain grave offenses, such as abuse of patients or insubordination.

Free's complaint contained the following allegations regarding the incident which resulted in her discharge. On September 7, 1983, while on duty as the evening nurse supervisor, Free was informed that a patient had been arrested for possession of a handgun and that an order had been given to transfer the patient to Cermak Hospital. However, the police officer guarding the patient told Free that because bond was being posted for the patient, she would not be accepted at Cermak Hospital and would be returned to Holy Cross Hospital for

treatment. Free relayed this information to the hospital's chief of security, who told her that the patient was to be removed from the hospital "even if removal required forcibly putting the patient in a wheelchair and leaving her in the park." Although Free objected to the removal of the patient, she gave the necessary orders to effect the transfer.

The complaint further alleged that Free discussed the matter by telephone with the hospital vice-president, who became agitated, shouted, and used profanity in telling Free that it was he who had given the order to remove the patient. Free alleged that before she could inform the vice-president that she had complied with the order, she terminated the conversation in accordance with a hospital policy of terminating abusive contacts. Free further alleged that "pursuant to standing instructions and procedures," she contacted her immediate supervisor, who ordered her to proceed to the patient's room and call the attending physician for instructions concerning the patient. Before she arrived at the patient's room, a security officer stopped Free and instructed her to go to the office of the hospital vice-president. However, she first followed the orders of her immediate supervisor and called the patient's attending physician, who stated that he opposed the transfer. The physician instructed Free not to touch the patient but to document his order that the patient should remain at the hospital if bond was posted. Free then visited the patient's room, checked her condition, and attempted to calm her. While so occupied, Free received a telephone call ordering her to report to the office of the hospital vice-president. She accordingly proceeded to the office, where she was advised that her conduct was insubordinate and that her employment was immediately terminated.

Free's complaint alleged that the termination of her employment violated the terms of the personnel policy manual in a number of respects, including failure to follow the system of progressive discipline and lack of just cause for discharge. The complaint further alleged that the termination amounted to retaliatory discharge in violation of the public policy contained in the Illinois Right of Conscience Act (Ill. Rev. Stat. 1985, ch. 111½, par. 5301 et seq.) based upon her refusal to remove the patient and place her in a public park. A third count, involving the intentional infliction of emotional distress, has apparently been abandoned by Free and is not a subject of this appeal.

■■ The first issue to be considered is whether Free's complaint states a cause of action for retaliatory discharge based upon the Illinois Right of Conscience Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 5301 et seq.). The tort of retaliatory discharge exists where an

employee's discharge is "in contravention of a clearly mandated public policy." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876.) Free argues that she was wrongfully discharged by the hospital in violation of the public policy of Illinois which prohibits discrimination against hospital personnel to refuse to act contrary to their conscience. This public policy is expressed in the Illinois Right of Conscience Act, which states:

> "It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons *** who are engaged in, the delivery of medical services and medical care whether acting individually, corporately, or in association with other persons; and to prohibit all forms of discrimination, disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions in refusing to obtain, receive, accept or deliver medical services and medical care." Ill. Rev. Stat. 1985, ch. 111½, par. 5302.

As stated in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876, the test for determining if a complaint states a cause of action for retaliatory discharge is whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge. This test necessarily involves an examination of the history, purpose, language, and effect of the cited provision. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 527, 478 N.E.2d 1354.) "Conscience," as used in the Act, is defined as follows:

> " 'Conscience' means a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, obtains from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." (Ill. Rev. Stat. 1985, ch. 111½, par. 5303(e).)

"Medical care," as used in the Act, "means any phase of patient care, including but not limited to, testing; diagnosis; prognosis; ancillary research; instructions; family planning, counselling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures." (Ill. Rev. Stat. 1985, ch. 111½, par. 5303(a).) Based upon the language of the Act, the public policy mandated is that hospital personnel will not be discriminated against for refusing to perform medical services as they relate to their religious beliefs. This contemplates morally controversial issues such as euthanasia, sterilization, or abortion.

■ Free alleges in her complaint that the hospital discharged her for insubordination because, as an act of conscience, she refused to

provide a medical service ordered by the hospital, *i.e.*, she refused to evict a bedridden patient from the hospital. Nowhere in Free's complaint is it alleged that a refusal to follow the hospital's orders would conflict with her moral convictions arising from what are traditionally characterized as religious beliefs. Rather, Free's allegations relate to her ethical duty as a registered nurse not to engage in dishonorable, unethical, or unprofessional conduct of a character likely to harm the public as mandated by the Illinois Nursing Act (Ill. Rev. Stat. 1985, ch. 111, par. 3420). We do not believe that the Act contemplates the protection of ethical concerns as opposed to sincerely held moral convictions arising from religious beliefs. For this reason, we conclude that Free failed to state a cause of action for retaliatory discharge based on the Act.

●■ ■ Free next contends that the trial court erred in dismissing that portion of her complaint which alleged that her discharge constituted a breach of her employment contract with the hospital. Although the hospital maintains that she was an at-will employee, Free's complaint alleged that a personnel policy manual in effect at the time she was hired created enforceable contractual rights and that she was discharged in violation of the terms of the manual.

Until the recent supreme court decision in *Duldalao v. St. Mary of Nazareth Center* (1987), 115 Ill. 2d 482, there was a conflict in Illinois law on the question of whether an employee handbook or manual could create binding contractual obligations. In *Duldalao*, the court held that an employee manual or other policy statement will create enforceable contractual rights if the traditional requirements of offer, acceptance, and consideration are present.

It is well established that a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790.) For purposes of a motion to dismiss for failure to state a cause of action, all facts well pleaded must be taken as true and interpreted in the light most favorable to the plaintiff. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 836, 422 N.E.2d 86.) In view of the *Duldalao* decision, we believe that Free's action for breach of employment contract should be reinstated to allow her to develop the facts necessary to prove her claim.

■ The final contention raised by Free is that the trial court abused its discretion in refusing to grant her leave to file an amended complaint following dismissal of the original complaint. Her proposed

amended complaint alleged racial discrimination as an alternative public policy basis for her claim of retaliatory discharge and sought to clarify her claims under the Illinois Right of Conscience Act.

For the reasons previously discussed in this opinion, we conclude that Free does not have a valid claim under the Act. However, in light of our decision to remand the cause on the breach-of-contract claim, we believe that Free should be allowed to amend her complaint to set forth the additional public policy basis for her claim of retaliatory discharge.

Accordingly, the trial court's dismissal of the count alleging retaliatory discharge based on the Right of Conscience Act is affirmed; the order dismissing the breach-of-contract count and denying the plaintiff's motion for leave to amend the complaint is vacated and the cause remanded for further proceedings consistent with this opinion.

Affirmed in part, vacated and remanded in part.

McMORROW, P.J., and JOHNSON, J., concur.